241 P.3d 313 (2010)
237 Or. App. 500
Anita LaFORGE, Petitioner,
v.
DEPARTMENT OF HUMAN SERVICES, Respondent.
A142248.
Court of Appeals of Oregon.
Argued and Submitted August 25, 2010.
Decided September 29, 2010.
*314 Stephen Skipton, Eugene, argued the cause for petitioner. With him on the briefs were Lane County Legal Aid and Advocacy Center, and Karen A. Berkowitz, Deborah G. Weston, and Oregon Law Center.
Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.
Before SCHUMAN, Presiding Judge, and WOLLHEIM, Judge, and ROSENBLUM, Judge.
SCHUMAN, P.J.
Petitioner challenges a rule promulgated by the Department of Human Services (DHS). The rule establishes the criteria and procedures for obtaining a license to operate a residential care facility. According to petitioner, the rule is invalid because the statute that authorizes DHS to license residential care facilities requires the agency to consider the applicant's willingness to serve Medicaid recipients, and the rule permits the agency to grant a license without undertaking that consideration. We agree with petitioner, and we therefore hold that the rule is invalid.
The Oregon Administrative Procedures Act provides that "any person" may petition the Court of Appeals to determine the validity of a rule. ORS 183.400.[1] In *315 making that determination, we may consider only the rule under review, the statute authorizing the rule, and documents necessary to demonstrate compliance with rulemaking procedures. ORS 183.400(3). Based on our review of those sources, we must declare the rule invalid if we conclude that it violates constitutional provisions, exceeds the statutory authority of the agency that adopted the rule, or was adopted without complying with rulemaking procedures. ORS 183.400(4). Petitioner does not assert that the disputed rule is unconstitutional or that its adoption was procedurally flawed; her only assertion is that it exceeds DHS's statutory authority. A rule runs afoul of that requirement if it "depart[s] from a legal standard expressed or implied in the particular law being administered, or contravene[s] some other applicable statute. * * * To the extent that the rule departs from the statutory policy directive, it `exceeds the statutory authority of the agency' within the meaning of those words in ORS 183.400(4)(b)." Planned Parenthood Assn. v. Dept. of Human Res., 297 Or. 562, 565, 573, 687 P.2d 785 (1984).
Although our analysis and decision derive exclusively from the challenged rule and the statute under whose authority it was promulgated, we place the rule and statute in historical context because doing so may prove helpful in understanding the dispute. In 2008, the Legislative Assembly confronted a perception that residential care facilities were favoring some classes of recipientsin particular, those who paid with their own resources, as opposed to those whose fees were paid by Medicaid. Apparently in response to that perception, the legislature passed House Bill 3626, Oregon Laws 2008, chapter 18 (Special Session), which amended ORS 410.851 and ORS 443.420. The amended statutes are directed to DHS, the agency that is responsible for licensing and regulating residential care facilities for elderly and disabled Oregonians and that has authority to promulgate rules for carrying out those responsibilities. ORS 443.400-443.460.
The amended ORS 410.851(5) provides, among other things, that DHS "shall implement policies that offer incentives to providers for entering into Medicaid contracts with the department." The amended ORS 443.420 provides, in part:
"(1) A person applying for a license under ORS 443.415 [to maintain and operate a residential care facility] must, in the judgment of the director of [DHS], be a person:
"(a) Who demonstrates an understanding and acceptance of the rules governing residential facilities;
"* * * * *
"(6) Prior to an initial licensure of a residential care facility, [DHS] shall consider:

"(a) The license applicant's history of regulatory compliance and operational experience;
"(b) The need in the local community for the services offered by the license applicant, as demonstrated by a market study produced by the license applicant;
"(c) The willingness of the license applicant to serve underserved populations; and
"(d) The willingness of the license applicant to contract with [DHS] to provide services through the state medical assistance program."
(Emphasis added.)[2] Medicaid is a "state medical assistance program." ORS 410.040(10). Thus, as petitioner argues, the *316 statute requires DHS to consider a license applicant's willingness to accommodate Medicaid recipients.
After these statutes were passed, and in order "[t]o comply with House Bill 3626,"[3] DHS promulgated OAR XXX-XXX-XXXX. Section 2 of that rule provides, in part:
"Prior to beginning new construction of a building, or purchase of an existing building with intent to request a license, the applicant must meet the following criteria to receive approval from SPD [that is, the Seniors and People with Disabilities Division of DHS] for a potential license:
"(a) Applicants must demonstrate a past history, if any, of substantial compliance with all applicable state and local laws, rules, codes, ordinances, and permit requirements in Oregon, and the ability to deliver quality services to citizens of Oregon; and
"(b) The applicant, including applicants for change of ownership of existing licensed facilities, must provide a letter of intent as set forth in section (3) of this rule, and demonstrate a willingness to provide care and services for an underserved population."
(Emphasis added.) An "underserved population" is defined as one for whom "services are significantly unavailable," including "the general public," persons "with dementia or traumatic brain injury," and "[r]ecipients of Medicaid." OAR XXX-XXX-XXXX(52). The rule, as petitioner points out, requires the agency to demonstrate its willingness to provide care and services to "an" underserved populationthat is, to any underserved population; thus, the agency could meet the requirements of the rule by demonstrating, for example, a willingness to serve persons with traumatic brain injury, but not demonstrating a willingness to serve Medicaid recipients.
When DHS proposed what was to become OAR XXX-XXX-XXXX, several members of the public submitted comments pointing out that the proposed rule did not require DHS to consider an applicant's willingness to treat Medicaid recipients. In a "Hearing Officer's Report" on the rulemaking hearing, the agency responded:
"SPD believes that the rule meets the intent of HB 3626 Section 12 as written. In our restructure of the licensing requirements for initial licensure, the rule clearly states that consideration will be given to applicants that intend to provide services to an underserved population. Defining such a term cannot be limited to just one type of population, thus discriminating against other populations that SPD may not have considered."
The agency, in other words, defended the rule on the ground that complying with the literal text of the statute would privilege Medicaid recipients to the detriment of other underserved populations.
On judicial review, the agency wisely abandons that line of argument, perhaps in recognition of the fact that an agency is not free to substitute its policy objectives (nondiscrimination among underserved populations) for those that are expressly mandated by the enabling legislation (special consideration for Medicaid recipients). Instead, the state advances three other arguments. First, it informs us that the agency's application form for residential care facility applicants now requires that the applicant state its willingness to serve Medicaid recipients. The form, however, is not in the record, nor has it been promulgated as a rule. Second, the agency argues that nothing in OAR XXX-XXX-XXXX prevents consideration of willingness to serve Medicaid recipients. That is true, but irrelevant. The fact that a rule gives an agency the option of performing some action does not mean that the rule complies with a statute that makes performance mandatory. In fact, the opposite is true. In City of Portland v. Dollarhide, 300 Or. 490, 502, 714 P.2d 220 (1986), the Supreme Court held that, in determining whether a city criminal ordinance conflicts with a state criminal statute, "the test is whether the ordinance prohibits an act which the statute permits, or permits an act *317 which the statute prohibits." Just as Article XI, section 2, of the Oregon Constitution prohibits local governments from enacting criminal ordinances that conflict with state law, Dollarhide, 300 Or. at 502, 714 P.2d 220, so too does ORS 183.400(4)(b) prohibit an agency from promulgating rules that "depart[] from" a state law. Planned Parenthood Assn., 297 Or. at 565, 687 P.2d 785. By parity of reasoning, a rule that permits what a statute prohibits departs from the policy objective of the statute. OAR XXX-XXX-XXXX, as the state concedes, permits DHS to license a residential care facility without considering the applicant's willingness to contract with the state to serve Medicaid recipients, and ORS 443.420 prohibits the agency from licensing a residential care facility without considering the applicant's willingness to contract with the state to serve Medicaid recipients.
Finally, DHS argues that, because petitioner does not allege that DHS has ever failed to consider an applicant's willingness to serve Medicaid recipients, the challenge is premature: "If the agency does fail to consider that factor in a particular case, the appropriate remedy is an `as applied' challenge." Had the agency not adopted any rules, this argument might have some force. However, DHS has promulgated rules. In fact, the legislature has mandated that the agency do so: "For a residential care facility, * * * the Director of Human Services shall adopt rules governing * * * [c]are or training to be provided." ORS 443.450(1)(c) (emphasis added). Further, "[a]pplications for licensure to maintain and operate a residential facility shall be made to the Department of Human Services * * * on forms provided for that purpose." ORS 443.415(1). Clearly, the legislature has delegated to the agency the authority to enact licensing rules for residential care facilities and required the agency to exercise that authority. It has also imposed limitations on those rules, including the limitation that the rules cannot fail to require the agency to consider willingness to serve Medicaid recipients. In such a situation, ORS 183.400 clearly permits a person to challenge the rule; put another way, a challenger need not await enforcement of the rule because, independent of enforcement, the agency's failure occurred when it enacted the noncomplying rule.
In sum, we conclude that OAR XXX-XXX-XXXX exceeds the authority that the legislature delegated to DHS. That authority did not extend to rules that failed to require consideration of an applicant's willingness to serve Medicaid recipients, and that is what the agency's rule does.
OAR XXX-XXX-XXXX held invalid.
NOTES
[1] The statute does not require that the petitioner be aggrieved by the rule in order to bring such a challenge. Waterwatch v. Water Resources Commission, 199 Or.App. 598, 601, 112 P.3d 443 (2005). The Oregon Constitution, however, may impose such a requirement. Compare Yancy v. Shatzer, 337 Or. 345, 349, 362, 97 P.3d 1161 (2004) (implying that Oregon Constitution extends "judicial power" only to cases in which the court's decision will have a practical effect on the parties' rights), with Kellas v. Dept. of Corrections, 341 Or. 471, 145 P.3d 139 (2006) (holding that, in some circumstances, there is no constitutionally grounded justiciability requirement). In the present case, we need not belabor the point, because petitioner stated in her petition for review to this court that she is a Medicaid recipient, elderly, disabled, and in need of residential care. If constitutional standing is required, she has it, because "the court's decision in the matter will have some practical effect" on her rights. Brumnett v. PSRB, 315 Or. 402, 405, 848 P.2d 1194 (1993).
[2] Oregon Laws 2008, chapter 18, section 12 (Special Session) was amended in 2009. The only change was to substitute the phrase "the licensing agency" for "the department." Or. Laws 2009, ch. 595, § 781.
[3] Secretary of State, Notice of Proposed Rulemaking Hearing, Statement of Need and Fiscal Impact, "Rescinding the licensing moratorium for residential care and assisted living facilities" at 23, Oct. 24, 2008.