Argued and submitted July 15, 2010, OAR 635-043-0120 held valid July 27, 2011

CONFEDERATED TRIBES OF
SILETZ INDIANS OF OREGON,
*Petitioner,*

*v.*

FISH AND WILDLIFE COMMISSION,
an agency of the Department of Fish and Wildlife,
*Respondent.*

Department of Fish and Wildlife
A138947

260 P3d 705

Craig J. Dorsay argued the cause for petitioner. With him on the briefs was Dorsay & Easton, LLP.

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Stephanie L. Striffler, Senior Assistant Attorney General.

Kimberly D'Aquila and Lisa Bluelake, Tribal Attorney's Office, filed the brief *amicus curiae* for The Confederated Tribes of the Grand Ronde Community of Oregon.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Duncan, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Pursuant to ORS 183.400, petitioner Confederated Tribes of Siletz Indians of Oregon challenges OAR 635-043-0120, a rule promulgated by the Fish and Wildlife Commission (FWC) authorizing the issuance of ceremonial hunting permits for the Confederated Tribes of the Grand Ronde Community of Oregon (Grand Ronde Tribes or "the tribe") and establishing requirements for the use of those permits.[1] Petitioner contends that the rule is invalid because it exceeds FWC's statutory authority and because its adoption violates "separation of powers provisions of the Oregon Constitution."[2] We reject without discussion petitioner's constitutional challenge to the rule and write only to discuss its assertion that the rule exceeds the statutory authority of the agency. Based on our review of OAR 635-043-0120 and the pertinent statutes, we conclude that the rule is valid.

The issues in this case center around whether FWC has the authority to provide by rule for ceremonial hunting permits for the Grand Ronde Tribes in light of statutes governing FWC and an agreement between the Grand Ronde Tribes, the United States government, and the state on hunting and fishing (HF agreement). The HF agreement, which was entered into in 1986 and subsequently adopted by FWC,

---

[1] The Grand Ronde Tribes, as *amicus curiae*, filed a brief in support of OAR 635-043-0120, which it contends "is necessary to allow Grand Ronde to provide fresh deer, elk, and bear meat for important Tribal ceremonies and celebrations which take place outside the State of Oregon's * * * regular big game hunting seasons."

[2] In its first and second assignments of error, petitioner asserts that the rule is invalid because it was adopted without compliance with certain applicable rulemaking procedures. *See* ORS 183.400(4)(c). However, respondent asserts and petitioner conceded at oral argument that the subsequent readoption of the rule renders those assignments of error moot. *See Smith v. Dept. of Corrections*, 101 Or App 539, 541 n 1, 792 P2d 109 (1990) (subsequent adoption of permanent rule renders moot a contention that temporary rule was adopted without compliance with applicable rulemaking procedures). Petitioner's contention in its reply brief that the claims are not moot because of a potential award of attorney fees to it is foreclosed by *Keeney v. University of Oregon*, 178 Or App 198, 205-06, 36 P3d 982 (2001), *rev den*, 334 Or 327 (2002) (inchoate interest in attorney fees pursuant to ORS 183.497, dependent on the possibility that the petitioner might prevail on the merits on judicial review, is insufficient to prevent case from being moot). However, because the readoption of OAR 635-043-0120 does not affect petitioner's contention that the rule exceeds the agency's statutory authority and violates a constitutional provision, we consider the merits of petitioner's remaining assignments of error.

OAR 635-041-0600, permanently defines tribal hunting, fishing, trapping, and animal gathering rights. According to petitioner, the HF agreement defines the entirety of any tribal hunting right, and, because the state did not modify or amend the HF agreement when it authorized a Grand Ronde ceremonial hunt in OAR 635-043-0120, there is no legal authority for the challenged rule. FWC responds that, although the HF agreement defines the Grand Ronde Tribes' hunting rights, it does not prevent the state from authorizing additional hunting privileges for the Grand Ronde Tribes. Rather, FWC asserts that it has broad statutory authority to authorize hunting, and it was under that broad authority that the rule was adopted.

"In a rule challenge pursuant to ORS 183.400, 'judicial review * * * is limited to the face of the rule and the law pertinent to it.' " *WaterWatch v. Water Resources Commission*, 199 Or App 598, 605, 112 P3d 443 (2005) (quoting *AFSCME Local 2623 v. Dept. of Corrections*, 315 Or 74, 79, 843 P2d 409 (1992); omission in *WaterWatch*). In evaluating the validity of a rule pursuant to ORS 183.400, we may consider only the rule under review, the statutory provisions authorizing the rule, and copies of documents necessary to show compliance with applicable rulemaking procedures. ORS 183.400(3); *LaForge v. Dept. of Human Services*, 237 Or App 500, 502, 241 P3d 313, *adh'd to as modified*, 238 Or App 747, 243 P3d 137 (2010). We must declare the rule invalid only if, based on our review of those sources, we conclude that the rule violates constitutional provisions, exceeds the statutory authority of the agency, or was adopted without compliance with applicable rulemaking procedures. ORS 183.400(4).

We begin by generally describing the HF agreement. Pursuant to that agreement, during the fishing seasons prescribed for all citizens, tribal members may use a tribal fishing license in lieu of a state license within a defined geographic area. OAR 635-041-0600 Ex 2 (4). During the regular hunting season, in "addition to those hunting rights or privileges accorded to citizens or licensees of the State under state law, the Tribe" will "have the opportunity to harvest a total of 395 deer and elk (which total shall not include more than 45 elk) and 5 bear per year" within the same geographic area defined for tribal fishing rights. OAR 635-041-0600 Ex 2

(5)(a)(1) - (2).[3] The HF agreement "fully and completely define[s] the tribal hunting, fishing, trapping, and animal gathering rights, and no additional tribal rights * * * exist except those which are specifically set forth in [the] agreement." OAR 635-041-0600 Ex 2 (3)(a). Furthermore, "[a]ny hunting, fishing, trapping, and animal gathering, including method, time, and place, which is conducted by the Tribe or its members and which is not specifically permitted by [the] agreement shall be subject to regulation under applicable state laws." OAR 635-041-0600 Ex 2 (3)(b). The agreement further provides that "[t]he taking of deer or elk or bear in excess of the number specified" therein is not "included within the Tribe's cultural hunting rights and [is] subject to regulation under applicable state or federal law." OAR 635-041-0600 Ex 2 (5)(b)(4).

OAR 635-043-0120, the rule at issue in this case, was promulgated following a joint proclamation from the Governor, the FWC chairperson, and the Grand Ronde Tribes that called for the opportunity for the tribe to harvest additional big game animals for tribal ceremonial use. Like the HF agreement, the rule addresses the harvest of deer, elk, and bear by members of the Grand Ronde Tribes. OAR 635-043-0120(1). Specifically, pursuant to the rule, upon a written request from the Grand Ronde Tribes, the Department of Fish and Wildlife may issue permits to the tribe for the ceremonial harvest of up to 15 deer, nine elk, and three bears annually. OAR 635-043-0120(2), (3)(e). In contrast to tribal hunting under the HF agreement, which must take place during the regular hunting season, the rule provides for the following season dates: "for elk, April 1 through 3 days before the 1st day of general archery season (inclusive); for deer, January 1 through 3 days before the 1st day of general archery season (inclusive); for bear, January 1 through March 31 and June 1 through July 31 (inclusive) each year." OAR 635-043-0120(3)(e). "Tribal authorities may designate individuals to harvest animals using these ceremonial harvest permits." OAR 635-043-0120(3)(d). However,

---

[3] The HF agreement also contains numerous other provisions relating to, among other things, trapping, cultural animal gathering, and a tribal licensing and tagging system. The specifics of those provisions are not pertinent to the issues presented in this case.

"[a]nimals harvested under an authorized ceremonial harvest permit may only be used by Tribal members for ceremonial and cultural purposes. Animals and parts thereof may not be bartered or sold." OAR 635-043-0120(5). The rule limits the area in which ceremonial harvest permits are valid, providing that they are valid in the same geographic area defined for hunting and fishing in the HF agreement, that is, "the area as described in section 4 (a) 1 of the 1986 Agreement between the State of Oregon and the Tribes (See OAR 635-041-0600(4)(a)(1))."[4] OAR 635-043-0120(3)(g). The rule also states that "[a]uthorization of these ceremonial-hunting permits does not create, convey or imply any additional tribal legal or treaty entitlement, nor does it modify any existing agreement, treaty, or court decree." OAR 635-043-0120(6).

Petitioner contends that, because the HF agreement was not modified to provide for the ceremonial hunting permits allowed pursuant to OAR 635-043-0120, the rule is not valid under the statutes relied on by FWC. That is, according to petitioner, ORS 190.110 does not allow for the rule because it is not consistent with the HF agreement, and ORS 496.012, ORS 496.138, ORS 496.146, and ORS 496.162 "do not provide an independent state basis to grant special hunting rights to Grand Ronde tribal members[.]" FWC, in turn, asserts that the rule is authorized under its authority pursuant to ORS chapter 496. Based on the text and context of the relevant statutes, we agree with FWC. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (to interpret a statute, the court examines text and context and may consider pertinent legislative history offered by the parties to the extent the court considers it useful).

FWC is charged by statute with the responsibility to "implement the policies and programs of this state for the management of wildlife." ORS 496.138(1). Under that statute, FWC has broad authority to "adopt such rules and standards as it considers necessary and proper to implement the

---

[4] Petitioner and the Grand Ronde Tribes disagree as to their relative interests with respect to part of that geographic area. Petitioner contends that "it retains treaty hunting rights" in part of the geographic area to which OAR 635-043-0120 refers. The Grand Ronde Tribes assert that petitioner has no tribal rights in that area. Petitioner and FWC agree that it is not necessary to resolve that dispute as part of this rule challenge, and we do not address it herein.

policy and objectives of ORS 496.012 and perform the functions vested by law in the commission." ORS 496.138(2). The state's wildlife policy is set forth in ORS 496.012:

> "It is the policy of the State of Oregon that wildlife shall be managed to prevent serious depletion of any indigenous species and to provide the optimum recreational and aesthetic benefits for present and future generations of the citizens of this state. In furtherance of this policy, the [FWC] shall represent the public interest of the State of Oregon and implement the following coequal goals of wildlife management:
>
> "(1) To maintain all species of wildlife at optimum levels.
>
> "(2) To develop and manage the lands and waters of this state in a manner that will enhance the production and public enjoyment of wildlife.
>
> "(3) To permit an orderly and equitable utilization of available wildlife.
>
> "(4) To develop and maintain public access to the lands and waters of the state and the wildlife resources thereon.
>
> "(5) To regulate wildlife populations and the public enjoyment of wildlife in a manner that is compatible with primary uses of the lands and waters of the state.
>
> "(6) To provide optimum recreational benefits.
>
> "(7) To make decisions that affect wildlife resources of the state for the benefit of the wildlife resources and to make decisions that allow for the best social, economic and recreational utilization of wildlife resources by all user groups."

Those statutes, taken together, vest FWC with discretion to determine and implement rules it deems appropriate to allocate the state's wildlife resources. *See Mark v. Dept. of Fish and Wildlife*, 158 Or App 355, 367, 974 P2d 716, *rev den*, 329 Or 479 (1999) (statutes give FWC "discretion in deciding what subjects to cover and what rules to adopt"). FWC may also, "by rule[,] authorize the issuance of such licenses, tags and permits for angling, taking, hunting and trapping and may prescribe such tagging and sealing procedures as the commission determines necessary to carry out the provisions

of the wildlife laws or to obtain information for use in wildlife management." ORS 496.146(4).

As set forth above, FWC has the power to adopt rules that it deems appropriate to implement the state's wildlife policies, including permitting the orderly and equitable utilization of wildlife, ORS 496.012(3), and making decisions to allow for the best social, economic, and recreational utilization of wildlife resources, ORS 496.012(7). Thus, the statutes appear to provide ample authorization for FWC to promulgate OAR 635-043-0120. The rule provides for the issuance of hunting permits and reflects FWC's decision regarding an equitable allocation of wildlife resources in accordance with the state's wildlife policies.[5]

Nonetheless, petitioner argues that ORS 496.146 supports its position that FWC was without statutory authority to promulgate OAR 635-043-0120. In particular, petitioner points to the fact that ORS 496.146(6) provides that FWC may establish "special hunting and angling areas or seasons in which only persons less than 18 years of age or over 65 years of age are permitted to hunt or angle," and ORS 496.146(15) allows FWC to "establish special fishing and hunting seasons and bag limits applicable only to persons with disabilities." In petitioner's view, because the legislature specifically listed those powers, it thereby limited FWC's

---

[5] We note that the parties also discuss ORS 190.110, pursuant to which FWC, in the course of administering wildlife programs and policies, is authorized to cooperate with the Grand Ronde Tribes (as it did in this case). That statute provides, in part:

"(1) In performing a duty imposed upon it, in exercising a power conferred upon it or in administering a policy or program delegated to it, * * * a state agency of this state may cooperate for any lawful purpose, by agreement or otherwise, * * * with an American Indian tribe or an agency of an American Indian tribe. * * *

"(2) The power conferred by subsection (1) of this section to enter into an agreement with an American Indian tribe or an agency of an American Indian tribe extends to any * * * state agency that is not otherwise expressly authorized to enter into an agreement with an American Indian tribe or an agency of an American Indian tribe."

As petitioner points out, ORS 190.110 allows an administrative body only the capacity to cooperate or enter into agreements to carry out duties or powers that have otherwise been conferred upon it by the legislature. *State ex rel SOSCF v. Klamath Tribe*, 170 Or App 106, 115, 11 P3d 701 (2000).

ability to, by rule, provide for the ceremonial hunting permits at issue here. We are not persuaded.

Initially, we observe that the powers of FWC listed in ORS 496.146 do not purport to limit its broad discretionary authority pursuant to ORS 496.138 and ORS 496.012. Rather, those powers are "[i]n addition to any other duties or powers" provided to FWC by law. ORS 496.146. And, as noted, FWC's other duties and powers include promulgating rules that it "considers necessary and proper" to implement wildlife policies. ORS 496.138(2). Those policies include permitting "the equitable utilization of available wildlife" and making decisions regarding the "best social, economic and recreational utilization of wildlife resources." ORS 496.012(3), (7). Furthermore, ORS 496.146(4) gives FWC very general authority to authorize hunting permits "as the commission determines necessary to carry out the provisions of the wildlife laws[.]" The legislature's delineation of powers pursuant to ORS 496.146 is explicitly nonexclusive; it is in addition to anything else the commission may otherwise do given the powers and duties imposed on it by law. FWC's authority to establish special times and places for children and older people to hunt and to establish special hunting seasons and bag limits for persons with disabilities does not speak to its additional authority to provide for hunting permits by rule, nor does it limit FWC's ability to implement the state's broader policies. Given the general authority delegated to FWC by the legislature, along with the nature of ORS 496.146, OAR 635-043-0120 is within FWC's statutory authority.

Finally, in petitioner's view, OAR 635-043-0120 is contrary to law because it conflicts with the HF agreement. Petitioner contends that that agreement "is the exclusive expression of any Grand Ronde hunting rights or privileges" and "prohibits any hunting outside the express terms of the Agreement, whatever their basis, except for hunting conducted pursuant to state law, the same as every other citizen." However, the text of the HF agreement does not support petitioner's argument. That is, the agreement does not by its terms limit the state's ability to allow for hunting by the Grand Ronde Tribes. Rather, the HF agreement fully defines the tribe's hunting rights and permits the state to

regulate any hunting by the tribe and its members not specifically allowed thereunder.

The HF agreement was intended to resolve a disagreement between the state and the Grand Ronde Tribes regarding the tribe's hunting, fishing, animal gathering, and trapping rights. OAR 635-041-0600 Ex 2 (2). It specifically describes the controversy: "The Tribe contends that it possesses tribal hunting, fishing, trapping and animal gathering rights. The State, on the other hand, disagrees and presently enforces state law whenever the Tribe or its members hunt, fish, trap, or gather animals, contrary to any provision of the law." OAR 635-041-0600 Ex 2 (2)(a). In order to resolve the issue, the parties intended the agreement "to define, specifically and permanently, the nature and extent of the Tribe's rights." OAR 635-041-0600 Ex 2 (2)(b). In furtherance of that goal, the HF agreement contains principles in accordance with which the agreement is to be construed. Among those are the following:

"a. This agreement shall fully and completely define the tribal hunting, fishing, trapping, and animal gathering rights, and no additional tribal rights shall hereafter exist except those which are specifically set forth in this agreement.

"b. Any hunting, fishing, trapping, and animal gathering, including method, time, and place, which is conducted by the Tribe or its members and which is not specifically permitted by this agreement shall be subject to regulation under applicable state laws.

"* * * * *

"g. The parties agree that the State shall retain sovereign authority to manage fish and wildlife resources under applicable provisions of Oregon law, both on and off any reservation, established for the Tribe, subject to the provisions of this agreement."

OAR 635-041-0600 Ex 2 (3). Pursuant to the agreement, during the regular hunting season, the tribe may harvest deer, elk, and bear in the numbers and area set forth above, 244 Or App at 538, without a state hunting license. OAR 635-041-0600 Ex 2 (5). However, there is no tribal right to take deer, elk, or bear in greater number than the agreement provides,

and any additional taking of those animals is subject to regulation under state law. OAR 635-041-0600 Ex 2 (5)(b)(4) ("The following acts shall not be included within the Tribe's cultural hunting rights and are subject to regulation under applicable state or federal law * * * (4) The taking of deer or elk or bear in excess of the number specified in this agreement.").

Thus, as described therein, the agreement was aimed at defining the "rights" of the Grand Ronde Tribes to conduct hunting (and other) activities not necessarily otherwise provided for under state law. The HF agreement was to be the final resolution of the conflict with respect to that issue—fully and completely setting forth those rights as not subject to further state regulation. *See Webster's Third New Int'l Dictionary* 1955 (unabridged ed 2002) (a "right" is "a power or privilege to which one is justly entitled"; a "capacity or privilege the enjoyment of which is secured to a person by law"; or the "capacity to assert a legally recognized claim"). Although the agreement clearly states that the Grand Ronde Tribes possess no tribal hunting rights not provided for therein, contrary to petitioner's view, it does not prohibit the state from allowing for additional hunting for the tribe. Rather, it recognizes that the state may regulate hunting not specifically provided for in the HF agreement. That is, it states that hunting conducted by the Grand Ronde Tribes or members of the tribe that is not specifically allowed pursuant to the agreement is "subject to regulation under state law." Indeed, the agreement contemplates that the state, under its own laws, may permit the tribe to take additional deer, elk, or bear, but provides that the tribe does not have a tribal "right" to take additional animals. OAR 635-041-0600 Ex 2 (5)(b)(4).

Thus, although such hunting is not recognized as a tribal "right," the state may allow the tribe and its members to engage in hunting not contemplated by the agreement and may regulate that hunting (such as by requiring the tribe or its members to obtain state hunting licenses and comply with all other requirements of state law). That is wholly consistent with FWC, an agency of the state, providing by rule for the issuance of special ceremonial hunting permits for the Grand Ronde Tribes to conduct hunts not specifically allowed within

the tribal hunting rights described in the HF agreement. Thus, under the terms of the agreement, the state may regulate any hunting outside the agreement and, in promulgating OAR 635-043-0120, the state has done so.

In sum, we conclude that OAR 635-043-0120 is within the scope of FWC's statutory authority.

OAR 635-043-0120 held valid.