Submitted June 2, 2017, OAR 581-021-0047 (2016) held valid December 26, 2019

Jennifer K. WALTER,
*Petitioner,*

*v.*

OREGON BOARD OF EDUCATION,
*Respondent,*

*and,*

THE CONFEDERATED TRIBES
OF SILETZ INDIANS OF OREGON,
a federally-recognized Indian tribe,
*Intervenor-Respondent.*

Agency/Board/Other
A161646

457 P3d 288

Petitioner challenges the validity of OAR 581-021-0047 (2016). Respondent Oregon Board of Education promulgated the rule to implement a 2014 statute authorizing Oregon school boards to enter into a written agreement with the governing body of a federally recognized Native American tribe in Oregon to allow the use of a school mascot that "represents, is associated with or is significant to" the tribe. Petitioner contends that respondent's rule exceeded its authority under the 2014 statute because the statute only authorizes the use of "namesake" mascots. Petitioner further contends that, if the rule did not exceed respondent's authority under the statute, then the rule and its authorizing statute violate the Equal Protection Clause of the Fourteenth Amendment. *Held*: The rule did not exceed the board's authority under the statute because the statute did not limit the board to authorizing the use of only namesake mascots. Furthermore, in light of the limits imposed by ORS 183.400 on a challenge to the validity of a rule, petitioner's challenge under the Equal Protection Clause to the rule and its authorizing statute fails.

OAR 581-021-0047 (2016) held valid.

Jennifer K. Walter filed the briefs for petitioner *pro se.*

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent Oregon Board of Education.

Craig J. Dorsay, Lea Ann Easton, and Dorsay & Easton LLP filed the brief for respondent The Confederated Tribes of Siletz Indians of Oregon.

Kimberly D'Aquila and Holly Partridge filed the brief *amicus curiae* for the Confederated Tribes of The Grand Ronde Community of Oregon.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

OAR 581-021-0047 (2016) held valid.

### ARMSTRONG, P. J.

This is a petition under ORS 183.400 challenging the validity of OAR 581-021-0047 (2016), an administrative rule promulgated by the State Board of Education (board). The challenged rule implemented 2014 legislation authorizing district school boards to

> "[e]nter into an approved written agreement with the governing body of a federally recognized Native American tribe in Oregon to allow the use of a mascot that represents, is associated with or is significant to the Native American tribe entering into the agreement."

ORS 332.075(1)(g). Or Laws 2014, ch 43, § 1. Petitioner contends that the board's rule exceeds the board's authority under ORS 332.075 and, if the rule does not exceed the board's authority, petitioner challenges the constitutionality of both the statute and the administrative rule. The board responds that the rule does not exceed the board's authority or violate constitutional provisions. Intervenor, The Confederated Tribes of Siletz Indians (the Siletz Tribe), and *amicus curiae*, The Confederated Tribes of the Grande Ronde, (the Grande Ronde Tribe), have also appeared and make additional arguments in support of the rule's validity. We conclude that the rule is within the board's authority and constitutional, and we uphold its validity.

We consider administrative rule challenges under the scope of review specified in ORS 183.400(3):

> "Judicial review of a rule shall be limited to an examination of:
>
> "(a)   The rule under review;
>
> "(b)   The statutory provisions authorizing the rule; and
>
> "(c)   Copies of all documents necessary to demonstrate compliance with applicable rulemaking procedures."

In a rule challenge pursuant to ORS 183.400, judicial review is limited to the face of the rule and the law pertinent to it. "Numerous individual fact situations can arise under any rule, but judicial review of the rule as applied to each of those situations is reserved to other forums." *AFSCME Local 2632 v. Dept. of Corrections*, 315 Or 74, 79, 843 P2d

409 (1992). The court may hold a rule invalid under the circumstances described in ORS 183.400(4):

> "The court shall declare the rule invalid only if it finds that the rule:
>
> "(a)   Violates constitutional provisions;
>
> "(b)   Exceeds the statutory authority of the agency; or
>
> "(c)   Was adopted without compliance with applicable rulemaking procedures."

*See Nay v. Dept. of Human Services*, 360 Or 668, 679, 385 P3 1001 (2016) (explaining standard of review under ORS 183.400).

Petitioner contends that OAR 581-021-0047 (2016) is invalid because it exceeds the statutory authority provided in ORS 332.075. In the alternative, if the rule is within the board's authority under the statute, petitioner contends that both the statute and the rule violate Article I, section 20, of the Oregon Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## I.   STATUTORY AND PROCEDURAL BACKGROUND

We begin with some statutory context. Under ORS 326.011, the Board of Education is charged with establishing policies for the administration and operation of public elementary and secondary schools in Oregon. Under ORS 326.051(1)(b), the board is charged with adopting rules for the general governance of public schools.

ORS 659.850(2) prohibits discrimination in education:

> "A person may not be subjected to discrimination in any public elementary, secondary or community college education program or service, school or interschool activity or in any higher education program or service, school or interschool activity where the program, service, school or activity is financed in whole or in part by moneys appropriated by the Legislative Assembly."

*See also* ORS 659.850(1) (defining "discrimination" as used in the statute). ORS 659.850(3) requires the board to

establish rules necessary to "ensure compliance with" ORS 659.850(2).

A consensus of authority exists that the use of negative or derogatory stereotypical Native American mascots is harmful to Native Americans and fosters discrimination. In 2012, after receiving studies and holding public hearings, the board adopted OAR 581-021-0047 (2012), which prohibited public schools from using Native American mascots.[1]

The Siletz Tribe and the Grande Ronde Tribe opposed the adoption of OAR 581-021-0047 (2012), expressing the view that a wholesale ban on Native American mascots was itself discriminatory and would not help to dispel misconceptions about Native American people or address existing derogatory stereotypes or discriminatory practices. The tribes were also concerned that a total ban might result in a backlash against tribes and Native American students.[2]

---

[1] OAR 581-021-0047 (2012) provided:

"(1) *****

"(2) To ensure that all public schools are in compliance with ORS 659.850 which prohibits discrimination in public schools, on or after July 1, 2017, the use of any Native American mascot by a public school is prohibited.

"(3)(a) The prohibition under this section includes a prohibition on the use of team names such as 'Redskins,' 'Savages,' 'Indians,' 'Indianettes,' 'Chiefs,' 'Chieftains,' and 'Braves.'

"(b) A public school may continue to use the team name 'Warriors' as long as it is not combined with a symbol or image that depicts or refers to an American Indian Tribe, individual, custom or tradition.

"*****

"(5) Each school district, education service district or sponsor of a public charter school shall notify:

"(a) On or before January 1, 2013, the Department of Education if any school operated by the district or sponsor uses a Native American Mascot; and

"(b) On or before July 1, 2017, the Department of Education when a new mascot is adopted for the public school.

"*****

"(6) The Superintendent of Public Instruction shall find any school district, education service district or public charter school that violates this section to be in noncompliance with the discrimination prohibitions under ORS 659.855. Pursuant to ORS 659.855, The Superintendent may immediately withhold all or part of state funding from the school district, education service district or public charter school."

[2] The Siletz Tribe wished to allow the Siletz School, a local charter school, to retain its mascot, the "Siletz Warriors," which had been associated with the school for 75 years.

The tribes believed that, in contrast, culturally appropriate mascots could support students' self-esteem and tribal identity. They also believed that tribes should have a voice in determining what was culturally appropriate. To combat a lack of knowledge leading to negative stereotypes, the tribes supported allowing schools to continue using Native American mascots if school districts collaborated with representative tribes to create positive and culturally appropriate portrayals of Native Americans and to integrate cultural and historical curricula that accurately portrayed Oregon's Native history.

ORS 182.164(3) requires that state agencies and units of local governments "shall make a reasonable effort to cooperate with tribes in the development and implementation of programs" affecting tribes, including the use of agreements as authorized by ORS 190.110. ORS 190.110 in turn provides that, in performing duties imposed on it, a state agency or unit of local government "may cooperate *** by agreement *** with an American Indian tribe." The Siletz and Grande Ronde Tribes sought to be involved in the development of policy around the use of Native American mascots, as required and authorized by state law, and they actively pursued legislation to that effect.

ORS 332.075 sets forth the general powers of local school boards. Senate Bill 215 (2013), supported by the Siletz and Grande Ronde Tribes, would have amended ORS 332.075 to authorize a local school district board to enter into a written agreement with the governing body of a federally recognized tribe in Oregon for the use of an "acceptable name, symbol or image of a mascot that represents, or is associated with, a Native American tribe."[3] However, then-Governor Kitzhaber vetoed the bill. In his veto message, the Governor expressed concern that the statute was too broad and his hope that interested parties "can work together over the coming months to bring to the Board or the 2014 legislature a consensus proposal that would provide for reasonable exceptions to the [Board of Education's

---

[3] The Siletz Tribe's opposition also stemmed from its desire that the Siletz School, on the Siletz reservation, be allowed to retain its mascot, the "Siletz Warriors," which has been associated with the school for over 75 years.

ban on use of Native American mascots] without violating the Board's obligation to prohibit discrimination in education." Senate Journal, RS SJ 206 (2013).

The Siletz and Grande Ronde Tribes continued their efforts to find a compromise to a total ban on the use of Native American mascots. In 2014, the tribes worked with the Governor's office and the Department of Education for the passage of Senate Bill 1509, which the legislature enacted and the Governor signed, and which is now codified at ORS 332.075(1)(g). ORS 332.075(1)(g) authorizes school districts and tribes to reach agreements for the use of a mascot that "represents, is associated with or is significant to" the tribe:

"(1)   Any district school board may:

"* * * * *

"(g) Enter into an approved written agreement with the governing body of a federally recognized Native American tribe in Oregon to allow the use of a mascot that represents, is associated with or is significant to the Native American tribe entering into the agreement. An agreement entered into under this paragraph must:

"(A)   Describe the acceptable uses of the mascot;

"(B)   Comply with rules adopted by the State Board of Education that:

"(i)   Are adopted after consultation with the federally recognized tribes in Oregon pursuant to ORS 182.164(3); and

"(ii)   Prescribe the requirements for approval; and

"(C)   Be approved by the State Board of Education, which the board must provide if the agreement meets the requirements of this paragraph and the rules adopted under this paragraph."

SB 1509 required the board to adopt rules implementing the bill no later than January 1, 2017. Or Laws 2014, ch 43, § 1.

The board was a reluctant collaborator on the 2014 legislation, having determined based on its own research that *any* depiction of Native Americans as mascots was harmful to students. But ultimately, in response to the

legislature's mandate, the board promulgated OAR 581-021-0047 (2016) to create an exception to the former rule's general ban on the use of Native American mascots under the circumstances described in ORS 332.075(1)(g). As relevant, the rule provides:

"(1)   As used in this section:

"(a)   'Federally recognized Native American Tribe' means the following:

"(A)   The Confederated Tribes of the Warm Springs Indian Reservation.

"(B)   The Confederated Tribes of the Umatilla Indian Reservation.

"(C)   The Burns-Paiute Tribe.

"(D)   The Confederated Tribes of Siletz Indians of Oregon.

"(E)   The Confederated Tribes of the Grand Ronde.

"(F)   The Cow Creek Band of Umpqua Indians.

"(G)   The Confederated Coos, Lower Umpqua and Siuslaw Tribes.

"(H)   The Klamath Tribe.

"(I)   The Coquille Tribe.

"(b)   'Native American mascot' means a name, symbol or image that depicts or refers to an American Indian Tribe, individual, custom or tradition that is used by a public school as a mascot, nickname, logo, letterhead or team name.

"(c)   'Public school' means a school or program operated by a school district, education service district or public charter school.

"(2)   To ensure that all public schools are in compliance with ORS 659.850 which prohibits discrimination in public schools, on or after July 1, 2017, the use of any Native American mascot by a public school is prohibited. This prohibition includes the use of team names such as 'Redskins,' 'Savages,' 'Indians,' 'Indianettes,' 'Chiefs,' 'Chieftains,' and 'Braves,' *except as provided in subsection (4).*

"(3)(a)   A public school may continue to use the team name 'Warriors' as long as it is not combined with a symbol or image that depicts or refers to an American Indian Tribe, individual, custom or tradition. This paragraph does not apply to those public schools that enter into agreements pursuant to subsection (4) of this section.

"(b)   Except as provided in subsection (4) of this section, a public school may continue to use a mascot that may be associated with Native American culture, custom or tradition if the mascot depicts an animal or other image that is not an individual. Examples of such mascots include team names and images such as the 'Thunderbirds', 'White Buffalo' and 'Eagles.'

"(4)(a)   Pursuant to ORS 332.075, a public school may use a mascot including those prohibited under section (2) that represents, is associated with or is significant to a Native American Tribe only if the public school enters into an approved written agreement with that federally recognized Native American Tribe in Oregon that meets the requirements of this subsection.

"(b)   A mascot may only be considered under this subsection to represent, be associated with or be significant to a tribe if all of the following requirements are met:

"(A)   The tribe entering into the agreement determines that the district's mascot represents, is associated with or is significant to the tribe[.]

"(B)   The public school at which the mascot is used is located within the traditional area of interest of the tribe that enters into the agreement."

(Emphasis added.) The rule, unlike the statute, includes a general ban on the use of Native American mascots. But it then provides for an exception that largely parallels the statute in permitting public schools to use mascots that are "associated with or *** significant to a Native American Tribe" if the public school enters into an approved agreement with that particular federally recognized tribe. OAR 581-021-0047(4). The rule also imposes additional requirements, not imposed by the statute and not at issue here, on

a school district's use of a Native American mascot through agreement.[4]

Petitioner brought this challenge under ORS 183.400, contending that OAR 581-021-0047(4) exceeds the board's statutory authority and that, if it does not, both the statute and that portion of the rule authorizing the use of mascots by agreement violate the Oregon and United States Constitutions. We turn to those arguments.

## II.  ANALYSIS

### A.  *Petitioner's Statutory Authority Challenge*

As petitioner construes ORS 332.075(1)(g), the statute authorizes only "namesake" mascots, that is, mascots that include the name of a particular tribe, with the tribe's approval. Any other mascot, petitioner contends, would be "race-based" and unconstitutional. For example, the Siletz Tribe could authorize a namesake mascot such as the Siletz Warriors, but the Grande Ronde Tribe could not consent to use of the "Banks Braves," because "Banks" is not a tribal name. Petitioner contends that OAR 581-021-0047(4) is invalid to the extent that it does not limit agreements between schools and tribes to namesake mascots, that is, to mascots that contain the name of the particular Oregon tribe. The board, the Siletz Tribe, and *amicus* the Grande Ronde Tribe respond that the legislature did not limit mascot agreements to agreements for namesake mascots and that the board therefore did not exceed its statutory authority by

---

[4] Among the requirements, OAR 581-021-0047(4)(e) requires a school to conduct a public hearing relating to the agreement. An agreement entered into pursuant to the rule must contain "[a] description of the acceptable uses of the mascot that the public school is using," including the name, and pictures depicting any image, logo or letterhead that is deemed acceptable. OAR 581-021-0047 (4)(g)(A). The agreement must include "[a] description of how American Indian/Alaska Native history and culture will be included in the curriculum of the public school," OAR 581-021-0047(4)(g)(B), and a description of how the agreement will be enforced, OAR 581-021-0047(4)(g)(C). The rule further requires the agreement to include a process for renewal approved by the public school governing body, the tribal government, and the board, and copies of school policies adopted pursuant to ORS 339.356 and OAR 581-021-0049 addressing complaints on harassment, intimidation or bullying and cyberbullying, race, color, religion, sex, sexual orientation, national origin, marital status, age or disability, and a description of how those policies are distributed to parents and students. OAR 581-021-0047 (4)(f)(G), (H), (I).

failing to limit the exception stated in OAR 581-021-0047(4) (2016) to namesake mascots.

We begin our analysis with the statute's text. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). ORS 332.075(1)(g) authorizes written agreements that allow the use of a "mascot that represents, is associated with or is significant to the Native American tribe entering into the agreement." In petitioner's view, that phrase implies cultural, if not legal, "ownership" of the Native American image or name and, hence, restricts the statute's provision to "namesake" mascots. The board responds that, by providing for agreements relating to mascot images "significant to the Native American tribe entering the agreement," the legislature has left the determination of the type of mascot to the tribe's judgment. The board and the Siletz Tribe note that many words, symbols, and images beyond a tribe's name have meaning to a particular tribe. They argue that what is significant to an individual Indian tribe may vary depending on that tribe's history and circumstances. Further, they argue, the statute's text, read in context, is unambiguous and does not limit mascots to namesakes. They contend that, if the legislature had intended a namesake mascot limitation, it would have said so explicitly.

We readily agree with the board and the Siletz Tribe that the statute does not limit agreements to namesake mascots and that the board did not exceed its authority under ORS 332.075(1)(g). The statute's text does not restrict the types of mascots to "namesake" mascots. But the text *does* restrict the type of Native American mascot to a mascot "that represents, is associated with or is significant to the Native American Tribe entering into the agreement."[5] That phrase is not defined; however, its terms have common meanings. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (court ordinarily presumes that legislature intended terms to have plain, natural, and ordinary meaning). As relevant here, the term "represent"

---

[5] "Native American mascot" is defined in OAR 581-021-0047(1)(b) as "a name, symbol or image that depicts or refers to an American Indian Tribe, individual, custom or tradition that is used by a public school as a mascot, nickname, logo, letterhead or team name."

is defined as "to bring clearly before the mind"; "to serve as a sign or symbol of"; and "to portray by pictorial, plastic, or musical art." *Webster's Third New Int'l Dictionary* 1926 (unabridged ed 2002). The term "associates" is defined as "to join (things) together or connect (one thing) with another"; and "to join or connect in any of various intangible or unspecified ways []as in general mental, legendary, or historical relationship." *Id.* at 132. The term "significant" is defined as "having meaning." *Id.* at 2116. The common meanings of the relevant terms in the text support a construction that ORS 332.075(1)(g) allows agreements as to Native American mascots of many types and is not restricted to namesake mascots.

Whether the legislature likely intended one meaning or the other is determined by reference to the use of the term in context. As the Supreme Court explained in *State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011), "Dictionaries, after all, do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used." (Emphasis in original.) Here, the context of the statute also supports the broader construction advocated by the board as granting authority to tribes to determine whether a mascot is one that is appropriate for an agreement. In addition to the use of broad terms, the legislature required that any rule be "adopted after consultation with the federally recognized tribes in Oregon pursuant to ORS 182.164(3)." ORS 332.075 (1)(g)(B)(i). The statute also restricts the board's ability to reject a written agreement between a school district and a tribe by requiring the board to approve an agreement if it "meets the requirements of this paragraph and the rules adopted under this paragraph." ORS 332.075(1)(g)(C). The context of ORS 332.075(1)(g) does not reflect an intention to restrict mascot agreements to namesake mascots.

We conclude that the text and context of ORS 332.075(1)(g) do not support petitioner's contention that the statute was intended to allow only namesake mascots. Instead, the statute was intended to allow local school districts and federally recognized tribes to enter into agreements for the "acceptable" use of a Native American mascot when that mascot "represents, is associated with or is

significant to" the tribe entering into the agreement. The board had authority to adopt a rule consistent with the legislative policy expressed in the statute. Therefore, the board did not exceed its statutory authority when it adopted OAR 581-021-0047 (2016).

B.   *Petitioner's Constitutional Challenges*

Having rejected petitioner's contention that the board exceeded its statutory authority in adopting OAR 581-021-0047 (2016), we turn to petitioner's contention that, to the extent that ORS 332.075(1)(g) is construed to permit mascot agreements for other than namesake mascots, the statute and the rule implementing it violate Article I, section 20, and the Equal Protection Clause because they permit "race-based" discrimination.[6]

The board asserts that we should not reach petitioner's arguments under Article I, section 20, because they are undeveloped. *See State v. McNeely*, 330 Or 457, 468, 8 P3d 212, *cert den*, 531 US 1055 (2000) ("Defendant's summary reference to the Eighth and Fourteenth Amendments is insufficient to present any specific federal constitutional argument to this court and, accordingly, we decline to address the issue."). We agree with the board that petitioner has not separately developed an argument under Article I, section 20, and we therefore decline to address that challenge.

Petitioner does develop an argument that the statute and the rule violate the Equal Protection Clause, and we turn to that. Under the Equal Protection Clause, no state shall "deny to any person within its jurisdiction the equal protection of the laws." The provision is, in essence, a direction that all persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 US 432, 439, 105 S Ct 3249, 87 L Ed 2d 313 (1985); *Plyler v. Doe*, 457 US 202, 216, 102 S Ct 2382, 72 L Ed 2d 786 (1982).

---

[6] The board contends that the constitutionality of the statute is not properly before us in a rule challenge under ORS 183.400. However, the Supreme Court has held, in a rule challenge, that the constitutionality of the rule's enabling statute is properly before the court. *See Gilliam County v. Dept. of Environmental Quality*, 316 Or 99, 106-08, 849 P2d 500 (1993), *rev'd on other grounds sub nom Oregon Waste Systems v. Dept. of Environmental Quality*, 511 US 93, 114 S Ct 1345, 128 L Ed 2d 13 (1994) (analyzing constitutionality of enabling statute as part of analysis of constitutionality of administrative rule under ORS 183.400).

Legislation often "classifies" for one purpose or another. Differential treatment by the government of a class or group of people does not necessarily result in a violation of the Equal Protection Clause. Legislatures and agencies are given wide latitude and accorded deference to enact laws and rules that effectuate a legitimate state interest. Courts will uphold an ordinary classification if it bears a rational relationship to some legitimate end. *Romer v. Evans*, 517 US 620, 631, 116 S Ct 1620, 134 L Ed 2d 855 (1996).

However, when legislation either expressly classifies by certain criteria or has the purpose and effect of discriminating against a class defined by criteria that are, in a constitutional sense, "suspect," the legislation is subject to strict scrutiny to determine whether it discriminates unlawfully. *Hunt v. Cromartie*, 526 US 541, 546, 119 S Ct 1545, 143 L Ed 2d 731 (1999); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 US 252, 265, 97 S Ct 555, 50 L Ed 2d 450 (1977). "Race" is a suspect classification, and government action that either confers a benefit based on race, *see Fischer v. University of Texas*, ___ US ___, 136 S Ct 2198, 195 L Ed 2d 511 (2016) (college admissions preferences for racial minorities), or imposes a burden based on race, *see Adarand Constructors, Inc. v. Pena*, 515 US 200, 115 S Ct 2097, 132 L Ed 2d 158 (1995) (challenge to minority preferences in public contracting), is subject to strict scrutiny to determine whether the burden "is precisely tailored to serve a compelling governmental interest." *Regents of University of California v. Bakke*, 438 US 265, 299, 98 S Ct 2733, 57 L Ed 2d 750 (1978) ("When [political judgments] touch upon an individual's race or ethnic background, he is entitled to a judicial determination that the burden he is asked to bear on that basis is precisely tailored to serve a compelling governmental interest.") Similarly, a law that is written in neutral terms may be subject to strict scrutiny upon a showing that it has a discriminatory purpose or effect on a class defined by a "suspect" criterion. *Cromartie*, 526 US at 546.

Petitioner's overarching equal protection argument is that ORS 332.075(1)(g) and OAR 581-021-0047 place Native Americans at a disadvantage "by singling out Native American mascots for a different standard than applies to any other racial mascots." We assume, for purposes of this

discussion, that people of Native American ancestry are a "race" of people who would constitute a class based on criteria that are suspect, as that term has been used in Equal Protection Clause jurisprudence.[7] Thus, the first question to be addressed in an equal protection analysis would be whether the statute and administrative rule on their face impose a burden on Native Americans such that the statute's constitutionality is subject to "strict scrutiny."

OAR 581-021-0047 (2016) does use a race-based term. It does so first by prohibiting the use of "Native American mascot[s]", and then by providing an exception for "Native American mascot[s]" that are approved by a tribe. Thus, the rule permits different treatment of Native American mascots by explicitly permitting them in some circumstances, where there are no similar provisions with respect to non-Native American race-based mascots.[8]

Petitioner acknowledges that mascots are not people for purposes of the Oregon and United States Constitutions. In that light, petitioner's argument that the differential treatment of mascots results in an adverse effect or disadvantage to Native Americans appears to be two-fold. Petitioner argues that the allowance of Native American mascots—even culturally appropriate ones—is harmful, in that it allows Native Americans to be portrayed as mascots. And petitioner argues that permitting federally recognized tribes to enter into agreements based on the tribes' own determination of what constitutes an appropriate representation by a mascot places individual tribal members and

---

[7] We note, however, that differential treatment with respect to tribes is not considered to be race based, but rather is regarded as "political" and not inherently suspect or subject to strict scrutiny. *See, e.g.*, *Agua Caliente Tribe of Cupeno Indians v. Sweeney*, 932 F3d 1207, 1220 (9th Cir 2019) ("We have held, 'the recognition of Indian tribes remains a political, rather than racial determination,' and we therefore 'appl[y] rational basis review.'" (Quoting *Kahawaiolaa v. Norton*, 386 F3d 1271, 1279 (9th Cir 2004)); *American Federation of Government Employees v. United States*, 330 F3d 513, 521 (DC Cir 2003) ("[T]he Supreme Court has made it clear enough that legislation for the benefit of recognized Indian tribes is not to be examined in terms applicable to suspect racial classifications.").

[8] Petitioner contends that that is the only circumstance in which race-based mascots are permitted under Oregon law. But she is incorrect. Apart from the general prohibition of discrimination in education, ORS 659.850, there are no statutory or administrative restrictions on the use of other types of race-based mascots.

nontribal Native Americans who might disagree with that representation at a disadvantage.[9]

In support of her argument concerning the general harmfulness of Native American mascots, petitioner cites a report submitted to the board in 2012 by Susan Castillo, the Superintendent of Public Instruction. That report concluded that using even positive Native American images as mascots promotes discrimination, pupil harassment, and stereotyping, and recommended that the board adopt an administrative rule prohibiting the use of names, symbols or images that depict or refer to an American Indian Tribe, custom, or tradition as a mascot, nickname, logo, or team name. Petitioner contends that, just as the United States Supreme Court considered sociological studies in its opinion in *Brown v. Board of Education*, 347 US 483, 74 S Ct 686, 98 L Ed 873 (1954), this court should consider such studies in determining whether there is harm associated with Native American mascots. Petitioner also cites portions of the 2014 legislative record in support of her view that *all* Native American images and mascots—even those that are positive and culturally appropriate—are harmful to Native American students.

We note that the legislative record also includes testimony, supportive of the adoption of SB 1509, that the use of positive and respectful Native American imagery in schools would combat racial stereotypes and discrimination against Native American students. And the record includes testimony from tribes that they believe that they are uniquely qualified to speak to the use of Native American mascots

---

[9] Petitioner contends that many Native Americans oppose the use of Native American mascots and that the statute and the rule create "a separate standard for those who are opposed to being represented as a mascot" by creating a nearly impossible burden, "because there is no provision in the law for a person to appear before the State Board to challenge whether a particular mascot represents a particular tribe." Although a person could not present such a challenge to the board, people could present that challenge to a school board before it enters a mascot agreement with a federally recognized tribe under OAR 581-021-0047 (4)(e), which explicitly requires public hearings and the taking of testimony:

"A public school must conduct a public hearing relating to the agreement and give opportunity for members of the public to provide written and oral comments to the public school about the agreement. The public hearing must be conducted prior to the public school entering into the agreement."

and to participate in the creation of positive and respectful Native American imagery and the development of curricula relating to tribal history and culture.

But that legislative record, while helpful in discerning legislative intent in the adoption of SB 1509, cannot properly be considered "evidence" here either in support of or in opposition to petitioner's position. Further to that point, in this rule challenge, there *is* no evidentiary record. Petitioner's contentions regarding adverse effects are not apparent on the face of the rule and require a factual inquiry, and factual inquiries are beyond the limited scope of our review under ORS 183.400. *See Gilliam County v. Dept. of Environmental Quality*, 316 Or 99, 113, 849 P2d 500 (1993), *rev'd on other grounds sub nom Oregon Waste Systems v. Dept. of Environmental Quality*, 511 US 93, 114 S Ct 1345, 128 L Ed 2d 13 (1994) (limited scope of review in rule challenge under ORS 183.400 precludes court from deciding factual inquiries necessary to determine whether surcharge on the disposal in Oregon of solid waste generated outside the state is impermissible as "disproportionate" under the Commerce Clause of the United States Constitution). *See also Confederated Tribes v. Dept. of Fish and Wildlife*, 244 Or App 535, 538, 260 P3d 705 (2011) (in a rule challenge under ORS 183.400, court may consider "only the rule under review, the statutory provisions authorizing the rule, and copies of documents necessary to show compliance with applicable rulemaking procedures"). In this rule challenge, we are not in a position to make findings or resolve factual disputes as to the potential discriminatory purpose and effect of allowing tribes to agree to positive and culturally appropriate mascots.[10]

There are challenges that may be brought to address the kinds of factual inquiries that petitioner raises, *see, e.g.*,

---

[10] Petitioner also points out that, by its literal terms, the rule would permit a Native American tribe and a school district to agree to names such as "Redskins, Savages, and Indians," without state oversight. Even assuming that possibility, we readily conclude that an agreement allowing such mascot names would be contrary to the board's intention as expressed in the entirety of the administrative rule and would, of course, be subject to challenge under state and federal statutes that prohibit discrimination.

ORS 659.860(1) ("Any person claiming to be aggrieved by unlawful discrimination" in education may "file a civil action in circuit court."), but judicial review under ORS 183.400 is not among them. *Gilliam*, 316 Or at 113 (quoting *AFSCME Local 2623*, 315 Or at 79 ("[J]udicial review under ORS 183.400 is limited to the face of the rule and the law pertinent to it. Numerous individual fact situations can arise under any rule, but judicial review of the rule as applied to each of those situations is reserved to other forums.")). Because we cannot determine the facts on which petitioner's race-based equal protection challenge depends, we reject petitioner's equal protection contention that OAR 581-021-0047(4) is invalid on its face because Native American mascots are categorically harmful.

Petitioner's remaining equal protection contention is that discrimination arises from allowing a federally recognized tribe—which cannot speak for all Native Americans—to reach an agreement with a school district regarding the use of mascots. She contends that allowing tribes to reach such agreements places at a disadvantage those tribal or non-tribal Native Americans who might disagree with a tribe's determination as to what constitutes an appropriate use of Native American imagery by a school district.

We understand petitioner's concern, but it does not rise to the level of an equal protection violation. People frequently disagree with enacted legislation or adopted administrative rules, and not every disagreement is the result of a disadvantage or adverse effect of constitutional significance. Contrary to petitioner's contention, there are processes available to any person who objects to the use of Native American mascots, *see, e.g.*, OAR 581-021-0047 (4)(e) (requiring a school to conduct a public hearing relating to the agreement, allowing members of the public to provide written and oral comments to the public school about the agreement). And the same provisions for challenging unlawful discrimination in education are available to all Oregonians—Native American tribal members, Native American nontribal members, and non-Native Americans, *see* ORS 659.860, and are not foreclosed by OAR 581-021-0047.

Additionally, petitioner's contentions relating to the disadvantages of individual Native Americans *vis-à-vis* tribes does not present a race-based challenge subject to strict scrutiny. The process does not single out a race for different treatment with respect to challenging the use of Native American mascots.[11] A law that neither burdens a fundamental right nor targets a suspect class will be upheld so long as it bears a rational relation to some legitimate state interest. *Romer*, 517 US at 631. We conclude that OAR 581-021-0047(4) (2016) survives under that standard. The rule bears a rational relationship to the state's legitimate goal of creating opportunities, through intergovernmental agreements, for federally recognized Native American tribes to be involved in decisions regarding the appropriate use of Native American mascots of significance to Oregon tribes, in order to combat negative stereotypes that are harmful to Native American students and to dispel misconceptions about Native American people.

OAR 581-021-0047 (2016) held valid.

---

[11] Additionally, as previously noted, federal courts have held that differential treatment of federally recognized tribes is not a race-based classification for equal protection purposes. *See* 301 Or App at 530 n 7.